UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



BRENDA CROUT, *Temporary Administrator*
*of the Estate of Dale R. Crout, decedent*,

            Plaintiff,

      v.

HAVERFIELD INTERNATIONAL, INC.,
*doing business as Haverfield Aviation, Inc.*,

          Defendant.

**DECISION AND ORDER**

6:14-CV-06520 EAW

## INTRODUCTION

Plaintiff Brenda Crout ("Plaintiff") filed this action on January 22, 2014, in the Supreme Court of New York, Kings County, arising from the death of her husband, Dale R. Crout ("the decedent"), in a tragic helicopter accident on November 15, 2012. (Dkt. 1). Defendant Haverfield International, Inc. ("Defendant") removed the action to the Eastern District of New York on April 7, 2014. (*Id.* at 1-2). The case was transferred to this Court by Stipulation and Order on September 9, 2014. (Dkt. 16).

Presently before the Court is Plaintiff's motion to approve the settlement of this action, in accordance with Local Rule of Civil Procedure 41(a)(2). (Dkt. 156). Plaintiff also seeks resolution of a fee dispute regarding her former counsel, Cellino & Barnes, P.C. ("Cellino & Barnes"). (*Id.*). For the reasons set forth below, the Court approves the proposed settlement and directs that Cellino & Barnes be paid $7,500 in attorneys' fees.

- 1 -

## FACTUAL BACKGROUND

On the morning of November 15, 2012, shortly before noon, a helicopter owned by Defendant and carrying the decedent took off on the second of three days of planned flights to inspect power lines in the vicinity of Corning, New York. (Dkt. 65 at 2). About 20 minutes into the flight, the vertical strut on the helicopter's right landing skid struck a wire. (*Id.* at 4). The impact caused the helicopter to crash, killing both the pilot and the decedent. (*Id.*). At the time of his death, the decedent was 41 years old, and left the following next of kin: Plaintiff; son Kendale Crout, then 13 years old; daughter Courtney Flahive, then 21 years old; and daughter Erica Westervelt, then 24 years old. (Dkt. 157 at ¶¶ 5-6).

Less than a week later, on November 21, 2012, Plaintiff contacted Cellino & Barnes. (Dkt. 164 at ¶ 4). Attorney Brian Goldstein, who manages aviation-related cases for the firm, thereafter spoke with Plaintiff and obtained background information regarding the helicopter crash, as well as discussed various potential legal issues that could arise in any litigation against Defendant. (*Id.* at ¶¶ 4-19). Mr. Goldstein recommended an estate attorney to Plaintiff, and caused initial intake materials to be mailed to her. (*Id.* at ¶¶ 21-22). Cellino & Barnes also conducted some "initial investigation" related to the helicopter crash. (*Id.* at ¶¶ 23-26).

On November 25, 2012, Plaintiff retained Cellino & Barnes to represent both her and her husband's estate in any action for damages arising out of the helicopter crash that killed the decedent. (Dkt. 157 at ¶ 7). Plaintiff sent Cellino & Barnes additional information regarding herself, the decedent, and their family, all of which was reviewed. (Dkt. 164 at ¶ 28). Mr. Goldstein also had a conversation with the adjuster assigned to the

matter by Defendant's insurers on November 26, 2012. (*Id.* at ¶¶ 32-34). Cellino & Barnes further conducted additional internet searches and preliminary research related to the helicopter crash, as well as exchanged emails with Plaintiff. (*Id.* at ¶¶ 36-44).

On December 3, 2012, Mr. Goldstein spoke with Plaintiff and was advised that she had decided to retain an estate attorney who had assisted with the decedent's father's and grandfather's estates. (*Id.* at ¶ 45). However, Plaintiff subsequently elected to use the attorney recommended by Cellino & Barnes when one of her stepdaughters refused to sign a waiver to have Plaintiff voluntarily appointed as the estate representative. (*Id.* at ¶ 48). Cellino & Barnes drafted initial discovery requests, as well as a letter to the adjuster assigned to the matter by Defendant's insurers. (*Id.* at ¶¶ 51, 53-55). Plaintiff never met anyone associated with the Cellino & Barnes firm during its involvement in her case, and her primary contact was a paralegal with the firm. (Dkt. 157 at ¶ 7).

Shortly after retaining Cellino & Barnes, Plaintiff learned that a lifelong friend, Norman R. Colon, Esq., specialized in personal injury and wrongful death litigation, and decided that she wished to be represented by Mr. Colon. (Dkt. 157 at ¶ 8). Mr. Colon informed Plaintiff that he would associate himself with Faraci Lange LLP ("Faraci Lange") in connection with the matter, and Plaintiff consented to that association. (*Id.*). Plaintiff retained Mr. Colon and Faraci Lange on December 19, 2012. (*Id.*).

At Plaintiff's direction, Faraci Lange sent a letter dated December 21, 2012, to Mr. Goldstein, informing him that Mr. Colon and Faraci Lange had been retained by Plaintiff, that Plaintiff was discharging Cellino & Barnes, and that Plaintiff requested that Cellino & Barnes provide "whatever papers, records and information you've acquired to [Faraci

- 3 -

Lange], along with your list of disbursements expended, itemized statement of time and your claimed hourly rate so that the time expended and disbursements incurred may be promptly paid to you." (Dkt. 157-5). On December 27, 2012, Stephen E. Barnes, Esq., sent a reply letter to Faraci Lange stating that the firm "elect[ed] to be compensated on a contingent fee basis based on the proportionate share of the work performed by each firm on the whole case" and that it "further elect[ed] that the fee division . . . be determined at the conclusion of the case." (Dkt. 157-8). Mr. Barnes also stated that the firm had incurred no disbursements. (*Id.*).

On December 31, 2012, Faraci Lange sent a letter with Plaintiff's affidavit to Cellino & Barnes in which, among other things, Plaintiff indicated that she was directing that Cellino & Barnes provide "an itemized statement of time expended by Cellino & Barnes and its hourly rate so that the value of your services together with disbursements expended can be promptly paid." (Dkt. 157-9 at 2). On January 13, 2013, Mr. Barnes sent a letter to Faraci Lange stating again that the firm "elected to be compensated on a contingency basis after the case is resolved" and that it "decline[d] to be compensated on an hourly basis[.]" (Dkt. 157-10). On February 12, 2013, Faraci Lange sent a letter to Cellino & Barnes reiterating that Plaintiff was electing to compensate Cellino & Barnes on a *quantum meruit* basis and that she did not consent to a contingent fee payment to Cellino & Barnes. (Dkt. 157-11).

Beginning August 28, 2013, Plaintiff has acted as "temporary administrator or limited administrator [of the decedent's estate] for purposes of maintaining to their conclusion the actions for the wrongful death and the pain and suffering prior to death of

the decedent against [Defendant]." (Dkt. 158 at ¶ 5). The instant action was commenced by Plaintiff on behalf of the decedent's estate over one year after retaining the Faraci Lange firm, on January 22, 2014. (Dkt. 1). Extensive litigation followed, including lengthy discovery and the filing of cross-motions for partial summary judgment (Dkt. 36; Dkt. 42), which were resolved by the Court on September 7, 2017 (Dkt. 65). The parties also participated in multiple mediations (*see* Dkt. 158 at ¶ 18), in addition to preparing the case for trial (*id.*). The case was scheduled to proceed to trial on September 5, 2018. As the trial approached, extensive motions *in limine* were filed by the parties, including motions addressed to complicated and unique issues as to the applicable standard of care. (*See* Dkt. 72; Dkt. 75; Dkt. 78; Dkt. 80; Dkt. 83; Dkt. 86; Dkt. 89; Dkt. 95; Dkt. 98; Dkt. 101; Dkt. 104; Dkt. 105; Dkt. 107; Dkt. 111; Dkt. 113). A lengthy pretrial conference was held on August 1, 2018, at which time the Court ruled from the bench on some of the pending motions and reserved decision on others. A further pretrial conference was scheduled to go forward on August 28, 2018, and with the consent of the parties, the Court also scheduled a settlement conference for August 8, 2018. At that settlement conference, after several hours of mediation, the parties agreed to settle the matter for $6,000,000. (Dkt. 155).

Thereafter, on October 24, 2018, Plaintiff filed the instant motion, seeking approval of the proposed settlement and resolution of the fee amount due to Cellino & Barnes. (Dkt. 156). The motion was served on Cellino & Barnes (Dkt. 161), which was directed to file a response by November 15, 2018 (Dkt. 162). On November 14, 2018, a Response Affirmation was filed by Mr. Goldstein, wherein he set forth the tasks allegedly performed

by the firm prior to Plaintiff terminating its services. (Dkt. 164). The Response Affirmation contained no information as to the background or qualifications of the Cellino & Barnes personnel who performed work on the case, nor did it contain an estimate of the hours performed on the case, the timekeepers' reasonable hourly rates, or the amount that Cellino & Barnes contended it was due (other than to state the firm was entitled to "a reasonable percentage of the fee"). Plaintiff filed a reply on November 26, 2018. (Dkt. 165).

Oral argument was held before the undersigned on December 7, 2018, with Mr. Goldstein appearing on behalf of Cellino & Barnes. (Dkt. 168). At oral argument Mr. Goldstein contended for the first time that the firm had devoted approximately 80 hours of time during the less than 30 days it was involved in the case. Mr. Goldstein stated that half of those hours consisted of his time (*i.e.* 40 hours), which could be broken down to less than 2 hours that he spoke on the phone with the adjuster and Plaintiff, 20 hours that he contended were devoted to drafting "discovery demands" that were attached to his Affirmation as Exhibit T, and 18 hours of other miscellaneous tasks. (*See* Dkt. 164-20).

After oral argument, at the Court's request, Faraci Lange submitted to the Court and counsel a copy of the file that was provided by Cellino & Barnes in December 2012, when the firm was discharged. (*See* Dkt. 170). The "discovery demands" were not included in that file. In fact, the file consists primarily of Plaintiff's tax returns that she provided to Cellino & Barnes, and also includes various newspaper articles and other investigatory research. (*Id.*).

## DISCUSSION

### I.    Approval of the Proposed Settlement

Local Rule of Civil Procedure 41 provides that "[a]ctions brought on behalf of decedents' estates shall not be settled or compromised, or voluntarily discontinued, dismissed, or terminated, without application to and leave of Court." L. R. Civ. P. 41(a)(2)(A). Local Rule 41 further provides any application for settlement approval must address, among other items, "the attorney's fees and disbursements to be paid out of the settlement," and states that "[u]pon approving the settlement, attorney's fees, and disbursements, the Judge shall direct the estate representative to apply to the appropriate Surrogate of the State of New York . . . for an order of distribution of the net proceeds of the settlement pursuant to Section 5-4.4 of New York's Estate Powers and Trusts Law ["EPTL"][.]" L. R. Civ. P. 41(a)(2)(A), (D).

In deciding whether to approve a proposed settlement under Local Rule 41(a)(2), the Court must determine whether "the proposed settlement is in the best interests of the estate and distributees." *Durlak v. Medtronic, Inc.*, No. 11-CV-234S, 2012 WL 2838764, at *1 (W.D.N.Y. July 10, 2012). In making that determination, the Court takes into account "(1) the circumstances giving rise to the claim, (2) the nature and extent of the damages, (3) the terms of the settlement and amount of attorneys' fees and other disbursements, (4) the circumstances of any other claims or settlements arising out of this same occurrence, and (5) the plaintiff's statement of why [she] believes this settlement is in the best interest of the estate and the distributees." *Id.*

The Court is familiar with the relevant factors in this case based upon its involvement in resolving the partial summary judgment motions and preparing for trial. Here, upon consideration of those factors, the Court finds that the proposed settlement should be approved. The proposed settlement amount of $6,000,000 was negotiated by experienced counsel and with the Court's assistance. The resolution is fair and appropriate, particularly taking into account the costs and inherent risks to both sides of a jury trial and the benefits of reaching a final resolution. Moreover, and as more fully discussed below, the attorneys' fees and disbursements sought are reasonable. Accordingly, Plaintiff's request for approval of the proposed settlement is granted. In accordance with Local Rule 41(a)(2)(D) and EPTL § 5-4.4, all issues related to the distribution of the net proceeds of the settlement (including the apportionment of the proceeds between damages for wrongful death and damages for conscious pain and suffering) are left for resolution by the Schuyler County Surrogate's Court. Plaintiff is directed to apply to the Schuyler County Surrogate's Court for an order of distribution promptly following entry of this Decision and Order.

## II.    Attorneys' Fees and Disbursements

### A.    Fees and Disbursements to be Paid to Faraci Lange and Mr. Colon

In connection with the proposed settlement, Faraci Lange and Mr. Colon seek $114,077.61 in disbursements and $1,961,974.13 in attorneys' fees, for a total sum of $2,076,051.74. (Dkt. 158 at ¶ 25). The Court finds these amounts reasonable. With respect to the disbursements, Faraci Lange and Mr. Colon have provided the Court with an itemized list of such disbursements, all of which were appropriately expended in the litigation of this action. (*See* Dkt. 158-4).

With respect to the issue of attorneys' fees, where Court-approval of a settlement is required pursuant to a local rule, the Court "must ensure that the allocation of attorneys' fees from the settlement proceeds represents suitable compensation for the attorney for his services[.]" *Johnson v. City of New York*, No. 08 CV 3673 KAM LB, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (quotation omitted). The Court will consider any contingency fee agreement between counsel and a party, but is not bound by the terms of such an agreement. *Id.*

Here, Faraci Lange and Mr. Colon seek $1,961.974.13 in attorneys' fees pursuant to the terms of their retainer agreements with Plaintiff, which entitle them to a fee of 33.3333% of the ultimate recovery.[1] Counsel have also submitted documentation demonstrating that, had they billed Plaintiff at their standard rates for the work performed in connection with this matter, the total fee would be $1,935,792.50, which is only $26,181.63 less than the requested fee amount. (*See* Dkt. 159 at ¶ 11; Dkt. 159-1). Under these circumstances and considering the complexity of this matter, the resources expended, and all other relevant case-specific factors, the Court finds the requested fee reasonable and appropriate. *Cf. Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990) (noting that "a contingency agreement is the freely negotiated expression both of a [party's] willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment," and that as such,

---

[1] Although the terms of the retainer agreements entitle counsel to one-third of the gross amount of the settlement proceeds, Faraci Lange and Mr. Colon have instead opted to request one-third of the net proceeds, after disbursements are subtracted, which benefits Plaintiff. (*See* Dkt. 158 at ¶ 24).

the Court "ought normally to give the same deference to these agreements as [it] would to any contract embodying the intent of the parties").

### B. Fees to be Paid to Cellino & Barnes

Having determined that Faraci Lange and Mr. Colon are entitled to $1,961.974.13 in attorneys' fees, the Court must next consider what portion of those fees, if any, must be paid to Cellino & Barnes for the work they performed on Plaintiff's behalf prior to their discharge. For the reasons set forth below, the Court orders that Cellino & Barnes receive $7,500 in attorneys' fees.

### 1. Legal Standard

This Court has ancillary jurisdiction to consider attorneys' fees disputes arising out of litigation pending before it. *See Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988). Where, as here, the Court's jurisdiction over the underlying litigation is based on diversity of citizenship, the Court applies New York law in deciding an attorneys' fees dispute. *See RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006) ("[A]ttorneys' fees are considered substantive under the *Erie* doctrine, and should be analyzed under state law in diversity cases."); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) ("New York Judiciary Law § 475 ('Section 475') governs attorneys' charging liens in federal courts sitting in New York.").

Under New York law, "[a]n attorney who is discharged without cause has three remedies to recover the value of his or her legal services: the retaining lien, the charging lien, and the plenary action in *quantum meruit*." *Schneider, Kleinick, Weitz, Damashek &*

*Shoot v. City of N.Y.*, 302 A.D.2d 183, 186 (1st Dep't 2002). "These remedies are not exclusive, but cumulative." *Id.*

A retaining lien "gives an attorney the right to keep, with certain exceptions, all of the papers, documents and other personal property of the client which have come into the lawyer's possession in his or her professional capacity as long as those items are related to the subject representation." *Id.* A retaining lien is "independent of the proceeds of the lawsuit, and it is extinguished only when the court, which controls the functioning of the lien, orders turnover of the file in exchange for payment of the lawyer's fee or the posting of an adequate security therefor following a hearing." *Cohen v. Cohen*, 183 A.D.2d 802, 803 (2d Cir. 1992). The retaining lien is "founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider,* 302 A.D.2d at 186.

"The second remedy available to an attorney for recovery of his or her fee is the Judiciary Law § 475 'charging lien.'" *Id.* "A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action." *Antonmarchi v. Consol. Edison Co. of New York*, 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (quotation omitted). "A charging lien must be based on the nature of the litigation, the difficulty of the case, the actual time spent by plaintiff and the necessity therefor, the amount of money involved, the results achieved, amounts customarily charged for similar services in the same locality, the certainty of compensation, and plaintiff's professional deportment." *Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16CV2379(DLC), 2018 WL 5255169, at *4 (S.D.N.Y. Oct. 22, 2018) (quotation omitted).

Section 475 provides that the existence of a charging lien is "conditioned upon the 'commencement of an action' and establishes the lien in favor of 'the attorney who appears for a party.'" *De La Paz v. Coastal Petroleum Transp. Co*, 136 F. Supp. 928, 930 (S.D.N.Y. 1955) (finding no charging lien existed where discharged attorney was retained for approximately six months, but no action was commenced until after discharge); *see also Itar-Tass Russian News Agency*, 140 F.3d at 450 ("The charging lien provided for by Section 475 is for the benefit of an 'attorney of record' only."); *Weg & Myers, P.C. v. Banesto Banking Corp.*, 175 A.D.2d 65, 66 (1st Dep't 1991) (Section 475 "grants a charging lien to an attorney only when there has been an appearance by that attorney in an action which creates or is the source of the funds against which the lien is asserted.").

Where a Section 475 charging lien exists, the calculation of the amount due thereunder varies depending on whether the fee dispute is between the client and the discharged attorney or between the discharged attorney and a subsequently retained attorney. Specifically, the New York Court of Appeals has held:

> When a client discharges an attorney without cause, the attorney is entitled to receive compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement. As between them, either can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of quantum meruit or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case.

> When the dispute is only between attorneys, however, the rules are somewhat different. The outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the

right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case.

*Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457-58 (1989). In accordance with this well-established New York law, the Second Circuit has held that where a client discharges a lawyer "without cause and prior to the conclusion of the case, . . . he or she may recover either (1) in *quantum meruit*, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (emphasis added). "Recovery on a *quantum meruit* basis is called for even where the attorney discharged without fault was employed under a contingent fee contract." *Id.* (quotation omitted). *Cf. Weg and Myers, P.C. v. 126 Mulberry St. Realty Corp.*, 453 F. App'x 90, 92 (2d Cir. 2011) (in assessing value under a *quantum meruit* theory, a court may consider the contingent nature of the representation, the results achieved prior to discharge, and the client's actual chance of success at the time of discharge, but a court is not required to give those factors "weight in every case").

Finally, where an outgoing attorney has neither a retaining lien nor a charging lien, he or she still retains a claim for the reasonable value of the legal services rendered. *See Hampshire Grp. Ltd. v. Scott James Co.*, No. 14CV2637 JGK MHD, 2015 WL 5306232, at *15 (S.D.N.Y. July 27, 2015) ("[T]he absence of a charging lien or a retaining lien is not dispositive of an outgoing attorney's claim to recovery of the reasonable value of legal services rendered and the attorney may still seek a recovery sounding in *quantum meruit*."). "In determining the value of the attorney's services provided to the client prior to

- 13 -

discharge," the Court takes into account "a number of variables," including "the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality." *Schneider*, 302 A.D.2d at 189.

## 2. Cellino & Barnes Holds Neither a Retaining Lien nor a Section 475 Charging Lien

As an initial matter, the Court considers whether Cellino & Barnes holds either a retaining lien or a charging lien in connection with this matter, and concludes that it holds neither.[2] Accordingly, the sole remedy available to Cellino & Barnes is a claim for the fair and reasonable value of the legal services it rendered to Plaintiff.

First, with respect to a retaining lien, there is no indication in the record before the Court that Cellino & Barnes is in physical possession of any of Plaintiff's assets. A retaining lien "is founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached." *Schneider*, 302 A.D.2d at 186; *see also Bretillot v. Burrow*, No. 14CV7633 JGK MHD, 2015 WL 5306224, at *8 (S.D.N.Y. June 30, 2015). Here, it appears that Cellino & Barnes voluntarily relinquished any papers or other assets of Plaintiff's it may have at one time possessed, and thereby forfeited any retaining lien. *Cf. Cheng*, 73 N.Y.2d at 459 (outgoing attorney surrendered rights to retaining lien at time that file was turned over to new counsel, but obtained a contractual lien by virtue of agreement entered into with new counsel in

---

[2]    As a result, it was improper and inaccurate for Mr. Barnes to communicate to Defendant's adjuster that Cellino & Barnes retained a "lien" for attorneys' fees. (Dkt. 158-7).

exchange for surrendering the file). In other words, Cellino & Barnes turned over its file to Faraci Lange without any meeting of the minds as to the payment that would be received—Plaintiff communicated that she would pay based upon an hourly rate and Cellino & Barnes communicated that it rejected this request and demanded that it be paid based upon a percentage of any recovery. (Dkt. 157-8; Dkt. 157-9; Dkt. 157-10). Thus, Cellino & Barnes surrendered any right to a retaining lien when it voluntarily surrendered the file to Faraci Lange.

Second, with respect to a Section 475 charging lien, as described above, such a lien is available only to an "attorney of record" upon the commencement of an action. "[B]efore an attorney can be granted a lien pursuant to Judiciary Law § 475, he or she must have appeared for the client by participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter." *Picciolo v. State*, 287 A.D.2d 721, 722 (2d Dep't 2001) (quotation omitted and alterations in original). "Thus, as a rule, a charging lien . . . will not attach . . . even though the attorney may have performed preliminary services for the client," and "[a]n attorney discharged before he or she has instituted an action has the right to compensation on a *quantum meruit* basis only." *Id.* (quotations omitted and alterations in original) (finding no charging lien under Section 475 where the discharged attorney engaged in communications with a state agency and attended an informal meeting at the state agency's offices, but "never brought a claim . . . or appeared in any litigation on behalf of [the client]"); *see also Bretillot*, 2015 WL 5306224, at *2, 7-8 (discharged attorney whose tasks included "amending plaintiff's initial Complaint, advising on matters of

strategy, corresponding regarding various matters, drafting responses to filings by opposing counsel, resolving copyright issues pending before the Copyright Office, and revising the [ultimately unfiled] Amended Complaint to reflect this resolution," and who had "a documented total" of 81 hours of attorney time invested was not entitled to a Section 475 charging lien because he had never appeared on behalf of the party in the litigation).

In this case, it is undisputed that Cellino & Barnes never commenced an action on behalf of Plaintiff and never appeared on Plaintiff's behalf in connection with the instant litigation. Indeed, Plaintiff never even met anyone associated with the firm. Instead, Cellino & Barnes performed preliminary services only, including investigation and communications with Defendant's agents. Under these circumstances, New York law is clear that no Section 475 charging lien attaches, and that Cellino & Barnes "has the right to compensation on a *quantum meruit* basis only." *Picciolo*, 287 A.D.2d at 722.

### 3. Even Assuming *Arguendo* that Cellino & Barnes Holds a Charging Lien, Recovery is Limited to the Value of the Legal Services Rendered

In its submissions to the Court, Cellino & Barnes has assumed that it is counsel of record and therefore entitled to a Section 475 charging lien. As set forth above, this is incorrect under applicable New York law. However, even assuming *arguendo* that Cellino & Barnes was correct and that it was entitled to a charging lien under Section 475, it would nonetheless be limited to a *quantum meruit* recovery.

As set forth above, New York law is quite clear that, as between a client and a discharged attorney, the discharged attorney can recover "a contingent portion of the former client's ultimate recovery . . . only if both of the parties have so agreed." *Universal*

*Acupuncture*, 370 F.3d at 263 (emphasis added). This is so because "due to the special relationship of the utmost trust and confidence between a client and an attorney, the client has the right to discharge the attorney at any time, for any reason, or for no reason, regardless of any particularized retainer agreement, and the client should not be compelled to pay damages for exercising the absolute right to cancel the contract." *Nabi v. Sells*, 70 A.D.3d 252, 253 (1st Dep't 2009). While an attorney has a countervailing right to "recover the reasonable value of services rendered," a contingent fee is available after discharge only if "the client and attorney . . . reach a new agreement that, in lieu of a fixed dollar amount for the *quantum meruit* value of services rendered, the discharged attorney shall receive as compensation a contingent percentage of the recovery." *Id*. Importantly, "such an arrangement of payment <u>cannot be compelled by the attorney</u>; it can only be reached with the consent of the client." *Id*. (emphasis added).

In this case, upon discharging Cellino & Barnes, Plaintiff made it clear that she was not agreeing to a contingent percentage fee payment. To the contrary, she repeatedly and consistently stated that she would pay Cellino & Barnes for the value of the services they had rendered and requested that Cellino & Barnes submit an itemized statement so that such payment could be effectuated. Because Plaintiff never consented to pay Cellino & Barnes a contingent percentage fee after terminating the attorney-client relationship, she cannot be compelled to do so. Rather, Cellino & Barnes was obligated at the time of its discharge to comply with Plaintiff's request and provide an itemized statement of its services, which it failed (and has still failed) to do.

At oral argument on the instant dispute, Mr. Goldstein argued on behalf of Cellino & Barnes that this dispute was not between a client and a discharged attorney, but rather was between a discharged attorney and an incoming attorney. Mr. Goldstein argued that in any case where a party has retained an attorney to replace the discharged attorney, the dispute is between attorneys only. This argument is unfounded and contradicted by New York case law.

*Glickson v. Eli Lilly & Co.*, 234 A.D.2d 416 (2d Dep't 1996) is instructive. In that personal injury action, the plaintiffs discharged their initially-retained law firm and caused their newly-retained attorney to send a letter to the formerly-retained law firm requesting "a bill for its services at the hourly rate." *Id.* at 416-17. The formerly-retained law firm refused to provide such a bill, instead maintaining that it was electing a "contingent quantum meruit percentage attorney's lien." *Id.* at 417.

Two years later, the matter settled, and the formerly-retained law firm sought a hearing regarding the apportionment of fees. *Id.* At that hearing, Plaintiffs, "concerned primarily with a prompt release of the settlement proceeds from escrow, took 'no position' with regard to the fee dispute." *Id.* The trial court found that the fee dispute was solely between attorneys and awarded the formerly-retained firm a contingent percentage fee based on its proportionate share of the work performed. *Id.* at 418.

On appeal, the Appellate Division reversed, finding that "[a]lthough [the] dispute is now only between attorneys, it is clear from the record that, prior to settlement, the dispute involved the clients, and the clients elected to pay [the formerly-retained firm] its fee based upon the fixed dollar value of its services on an hourly basis." *Id.* Accordingly, the

formerly-retained firm "clearly had no right" to "insist[] on deferring resolution of the fee dispute until the conclusion of the litigation" or to "assert[] a lien for a contingent fee." *Id.* Instead, the formerly-retained firm was limited to collecting "the fixed dollar value of its services on an hourly basis, in accordance with its clients' election." *Id.*

Similarly, in *Kennedy v. Point Dedicated Servs.*, LLC, 31 A.D.3d 1117 (4th Dep't 2006), a case involving Cellino & Barnes, it was Plaintiff's incoming attorney who "advised the Cellino & Barnes firm that plaintiff had elected that the fee for the Cellino & Barnes firm be determined based on a fixed dollar amount [on a quantum meruit basis] rather than on a contingency basis at the conclusion of the case." *Id.* at 1117-18 (quotation omitted). The Appellate Division, Fourth Department found that because "plaintiff elected that the outgoing firm, *i.e.,* the Cellino & Barnes firm, would be paid on a quantum meruit basis at the time he discharged that firm," Cellino & Barnes was not entitled to elect a contingent percentage fee. *Id.* at 1118.

The *Glickson* and *Kennedy* decisions both flatly contradict Cellino & Barnes' contention that the presence of an incoming attorney renders a dispute solely between attorneys. Indeed, the instant matter is even more clearly a dispute between a client and a discharged attorney than *Glickson* because, unlike the *Glickson* plaintiffs, here Plaintiff has taken a position regarding the fee dispute and affirmatively stated that she continues to elect to compensate Cellino & Barnes on a *quantum meruit* basis. (*See* Dkt. 157 at ¶ 11).

The Court of Appeals' decision in *Cheng,* on which Cellino & Barnes relies, does not change this conclusion. In *Cheng,* the discharged attorney conceded that he had "no rights under Judiciary Law § 475" because he was not an attorney of record, but argued

that he had a "contractual lien" based on an agreement he had reached with incoming counsel. 73 N.Y.2d at 458. The Court of Appeals agreed, finding that the discharged attorney's "security arose when, in exchange for turning over the [client's] file, and thereby surrendering his rights under the retaining lien, he obtained from the [incoming] firm a contractual lien for prior legal services rendered in the action," and that "the type of fee depend[ed] upon [the discharged attorney's] agreement with the [incoming firm]." *Id.* at 459. The issue in *Cheng* was therefore one of contract interpretation, with the Court of Appeals ultimately concluding that the more reasonable interpretation of the contract was that it provided for a contingent percentage fee. *Id.* at 459-60.

In this case, unlike in *Cheng*, there is no contract between Cellino & Barnes and Faraci Lange. Instead, Faraci Lange, in accord with Plaintiff's wishes and instructions, has repeatedly informed Cellino & Barnes that it will be paid on a *quantum meruit* basis. The only contract Cellino & Barnes has ever had in this case is the initial retainer agreement with Plaintiff, which she had "the absolute right to cancel" at any time and for any reason. *Nabi*, 70 A.D.3d at 253. No subsequent agreement gave Cellino & Barnes the right to a contingent percentage fee, and Cellino & Barnes has no right to insist upon a contingent percentage fee in light of Plaintiff's unwavering opposition to such an arrangement. *See id.* Accordingly, even were the Court to find that a charging lien existed in this case, the Court would still conclude that Cellino & Barnes was limited to a *quantum meruit* recovery.

### 4. Calculation of the Value of the Legal Services Rendered

Having determined that Cellino & Barnes must be paid on a *quantum meruit* basis, the Court next considers the value of its services to Plaintiff. "In ascertaining the

reasonable value of the legal services [provided by a discharged attorney], courts may consider the following factors: (1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained." *Casper v. Lew Lieberbaum & Co.*, 182 F. Supp. 2d 342, 346 (S.D.N.Y. 2002). "The law is clear that the party seeking fees bears the burden of proof." *OneWest Bank, N.A. v. Hawkins*, No. 14 CV 4656 NGG, 2015 WL 5706945, at *9 (E.D.N.Y. Sept. 2, 2015). "Under New York law, while the burden is on the discharged attorney to keep and present records from which the court may determine the reasonable value of his or her services, the failure to keep contemporaneous time records is not fatal to a fee request, although the court may discount the amount claimed accordingly." *Dweck Law Firm, L.L.P. v. Mann*, No. 03 CIV.8967 SAS, 2004 WL 2202587, at *2 (S.D.N.Y. Sept. 30, 2004).

In this case, while Mr. Goldstein has submitted a sworn affirmation setting forth in detail the services Cellino & Barnes performed, the affirmation contains no information regarding the time spent on these services, or the reasonable hourly rates and qualifications of the personnel who performed the work. Cellino & Barnes has also not set forth any suggested value for its services, instead opting solely to incorrectly argue that it is entitled to a contingent percentage fee. The Court further notes that Cellino & Barnes did not keep any contemporaneous time records with respect to the work it performed for Plaintiff.

Moreover, the Court finds incredible the sudden claim made by Mr. Goldstein at oral argument that the firm devoted 80 hours to the case during the less than 30 days it was

involved in representing Plaintiff. It is patently unreasonable to believe that the so-called "discovery demands," even with the time necessary for investigatory research, took 20 hours to draft. Many of the demands contain boilerplate language and are repetitive. Just by way of example, the first three demands seek duplicative information (the pilot's "employment application," "employment file," and "personnel file"), and the entire document spans just two pages. The undersigned assesses these discovery demands based on her experience, having been in private practice over 20 years before assuming the bench with a primary focus on civil litigation (including personal injury matters). Like many civil litigators, the undersigned spent a significant portion of her practice on discovery-related tasks. Against that background, the Court can safely say that it would not have taken a first-year associate anywhere near 20 hours to draft the "discovery demands," let alone an experienced practitioner allegedly specializing in aviation disasters. Perhaps even more importantly, the file provided by Cellino & Barnes to Faraci Lange did not include the "discovery demands." Thus, Plaintiff received no benefit from the time allegedly incurred by Cellino & Barnes on these "discovery demands," which apparently were memorialized in a memo to file and never disclosed until Cellino & Barnes submitted the memo to the Court as part of its fee request. (Dkt. 164-20).

Separate and apart from the time allegedly spent on the discovery demands, the Court is hard-pressed to credit the claims by Mr. Goldstein that he devoted another 20 hours to the file, and the firm incurred 40 additional hours of paralegal time. If those estimates were accurate, assuming rates of $100 for paralegal time and $300 for attorney time, the calculated fee for those 60 hours would amount to $10,000. However, the Court

has reviewed the Cellino & Barnes file for this matter (Dkt. 170), and it does not come anywhere near reflecting $10,000 worth of services. In fact, most of the work on the case appears to have been performed <u>by Plaintiff</u> in responding to requests and inquiries from Cellino & Barnes.

Plaintiff suggests that a fee award of $5,000 is appropriate in this case, based on an estimate of the time expended and the rates charged. (*See* Dkt. 165 at 10-11). In particular, Plaintiff argues that, given the minimal work performed in the short time that Cellino & Barnes represented Plaintiff, it is implausible that Cellino & Barnes expended more than 8 hours of attorney time and more than 20 hours of paralegal time, at rates of $300 and $100, respectively. *Id.* The Court does not disagree. <u>At most</u>, based on the Court's review of the file and the sworn statements by Mr. Goldstein (which again, contained no estimate of the hours worked), it is improbable that Cellino & Barnes spent any more than 15 hours of attorney time and 20 hours of paralegal time on the file.

The burden was on Cellino & Barnes to demonstrate the work it incurred on this file. While submitting an affirmation from Mr. Goldstein purporting to detail the work devoted to the case, the firm failed to provide any information regarding the hours worked, normal hourly rates, or background of the personnel involved with the case. The Court believes that it would be well within its discretion to award no fees to Cellino & Barnes. Nonetheless, the firm did provide a minimal amount of services to Plaintiff at the initial stages of this matter. Taking into account the factors set forth above (including in particular the facts that the services rendered were minimal and routine, that the matter (at least in its initial stages) was not usually complex, that Cellino & Barnes has presented no information

- 23 -

about the qualifications of the personnel who worked on the matters, and that, based on the Court's review of the record, it is implausible that more than 15 hours of attorney time and 20 hours of paralegal time were expended in connection with this matter), and while acknowledging that Plaintiff initially agreed to pay Cellino & Barnes a contingent fee but terminated that agreement within weeks before any significant work was performed, the Court finds that $7,500 is a reasonable amount to be paid to Cellino & Barnes on a *quantum meruit* basis. Indeed, it is probably more than the firm is entitled to, but nonetheless in its discretion the Court elects to award $7,500. Accordingly, the Court orders that Cellino & Barnes be paid a fee of $7,500 in full satisfaction of any claim for attorneys' fees arising out of the instant litigation. Cellino & Barnes' fee shall be paid out of the $1,961.974.13 in attorneys' fees awarded to Faraci Lange and Mr. Colon.

Finally, the Court notes that even if another method of compensation was mandated in this case—including even a percentage of the total recovery—the Court concludes that it would still award $7,500 to Cellino & Barnes based upon the comparatively negligible value that it provided to Plaintiff in connection with this case when compared to the tremendous effort and significant time devoted to this case by Plaintiff's current attorneys.

## CONCLUSION

For the foregoing reasons, it is hereby ordered as follows:

1.      This action for wrongful death and for pain, suffering and terror prior to death of Dale R. Crout, decedent, is settled in the amount of six million dollars ($6,000,000);

2.      The plaintiff administrator is directed to deliver to defendant Haverfield International, Inc. d/b/a and a/k/a Haverfield Aviation, Inc., a general release together with

a stipulation of discontinuance on the merits which shall be held in escrow until full and final payment has been made, and the plaintiff is directed to execute any other instruments required to effectuate the settlement;

      3.      Payment of disbursements to date shall be made to Faraci Lange LLP and Norman R. Colon in the sum of $114,077.61;

      4.      Legal fees shall be paid to Faraci Lange LLP and Norman R. Colon, Esq., in accordance with the retainer agreement allowing a legal fee of $1,961,974.13, less seven thousand five hundred dollars ($7,500.00) which shall be paid to Cellino & Barnes, PC, in full and final satisfaction of any claimed lien or other claim for attorneys' fees;

      5.      All other matters and issues not decided by this Court are hereby referred to Surrogate's Court, Schuyler County, New York, for determination, including the manner of distribution of the net proceeds to the next of kin beneficiaries;

      6.      Defendant Haverfield International, Inc. d/b/a/ and a/k/a Haverfield Aviation, Inc. is directed to pay within 30 days of the filing of this Order, the following, which shall be delivered to Faraci Lange for distribution:

      A.      To Faraci Lange LLP and Norman R. Colon, Esq., the sum of $2,068,551.74 as their legal fees and disbursements to date;

      B.      To Cellino & Barnes P.C., the sum of $7,500.00 as their legal fees and disbursements to date;

      C.      The balance of the settlement proceeds in the amount of $3,923,948.26, shall be paid to Brenda M. Crout and Erica L. Westervelt as co-administrators of the Estate of Dale R. Crout, decedent, to be immediately deposited

in an interest bearing trust or escrow account in a federally insured bank or trust company until further order of the Surrogate's Court, Schuyler County, New York, directing the manner of distribution of said proceeds is made, filed and served;

7.     The Clerk of Court is directed to close this case and dismiss the action without prejudice, with leave to reopen within 60 days in the event the settlement is not effectuated. Upon payment by Defendant of the sums specified above, the parties shall file with the Court a stipulation of discontinuance with prejudice. This Court shall retain jurisdiction for purposes of enforcing its Order and this settlement.

    SO ORDERED.

                                    _____
                                    ELIZABETH A. WOLFORD
                                    United States District Judge

Dated: December 14, 2018
       Rochester, New York